GEORGE C. AUCOIN, ESQ. LA Bar No. 24747
LAW OFFICES OF GEORGE C. AUCOIN, APLC
3500 N. Hullen St.
Metairie, LA 70002
Telephone:  985.727.2263
Facsimile:   985.951.7490
E-mail: aucoingc@att.net

Attorney for Plaintiff
ROMULO RIMANDO

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROMULO RIMANDO,** | **Case No. 5:08-cv-01874-JF** |
| **Plaintiff,** | |
| **v.** | |
| **ALUM ROCK UNION ELEMENTARY SCHOOL DISTRICT, MARIBEL GUIZAR-MAITA, INDIVIDUALLY,** | **PLAINTIFF'S MOTION FOR LEAVE TO SEEK ADMINISTRATIVE RELIEF** |
| **Defendant.** | |

**COMES NOW**, Plaintiff **ROMULO RIMANDO**, through undersigned counsel, who submits this motion for administrative relief in accordance with Local Rule 7-1(4), 7-4(b), 7-11, and 7-12 as follows:

Due to unforeseen preparations and evacuations of key office personnel in expectation of the arrival Hurricane Gustav in New Orleans where the undersigned lives and offices on August 29th, undersigned counsel was unable to electronically file Plaintiff's Memorandum in Opposition of Defendant's 12(b)(1) Motion to Dismiss on its due-date of Friday, August 29, 2008.  Plaintiff requests that this

Honorable Court accept Plaintiff's Motion, which has been filed within 72 hours of

its August 29, 2008 deadline -- Monday, September 1, 2008, from the city of

Birmingham, AL.

Plaintiff further requests this court allow said Memorandum to exceed the 25

page limitation as provided in Local Rule 7-3. As opposing counsel was

understandably unreachable the weekend of the filing of this motion, Plaintiff has

been unable to propose a stipulation in accordance with Local Rules 7-11 and 7-12.

However, to Plaintiff's belief, and through interaction with opposing counsel in

this matter, the mover also wishes to conduct as thorough and meaningful briefing

of these important constitutional issues as possible for the benefit of both parties,

the Court, and the development of the law. Plaintiff does not believe the

Defendants will be prejudiced by the submission of Plaintiff's Response within 36

hours of its due date, under these circumstances.

Plaintiff's Memorandum opposes Defendants' 12(b)(1) Motion to Dismiss,

which turns on complex issues of constitutional law, and thus requires a more

detailed discussion than can be articulately made in 25 pages. Plaintiff's Response

is dependent upon a contemporaneously filed forty-page memorandum at this stage

of the litigation. *See* Plaintiff's Memorandum in Opposition to Defendant's

Motion to Dismiss attached to this Motion as Ex "A". Plaintiff's counsel

originally prepared his Response in 12-point font. Upon correction of the font, in

accordance with the Local Rules, the 25-page limitation has been exceeded. Notwithstanding, the entirety of the arguments and jurisprudence contained in Plaintiff's brief are essential to its presentation and all due consideration by the Court, for good cause shown, is requested so that the Court is fully briefed on this issue prior to oral argument docketed for September 19, 2008.

Dated this 1st day of September, 2008.

Respectfully Submitted:

s/George C. Aucoin
**GEORGE C. AUCOIN**
La. Bar No. 24747
Law Offices of George C. Aucoin, APLC
3500 N. Hullen Street
Metairie, LA 70002
Telephone: (985) 727-2263
Facsimile: (985) 951-7490
***COUNSEL FOR PLAINTIFF***

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 1st day of September, 2008, I electronically filed the foregoing with the Clerk of Court CM/ECF system, which will automatically send notice to all counsel of record.

*s/George C. Aucoin*
GEORGE C. AUCOIN

**EXHIBIT "A"**

GEORGE C. AUCOIN, ESQ. LA Bar No. 24747
LAW OFFICES OF GEORGE C. AUCOIN, APLC
3500 N. Hullen St.
Metairie, LA 70002
Telephone:   985.727.2263
Facsimile:   985.951.7490
E-mail: aucoingc@att.net

Attorney for Plaintiff
ROMULO RIMANDO

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROMULO RIMANDO,** | **Case No. CV 5:08-cv-01874-JF** |
| **Plaintiff,** | |
| **v.** | |
| **ALUM ROCK UNION ELEMENTARY SCHOOL DISTRICT, MARIBEL GUIZAR-MAITA, INDIVIDUALLY,** | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| **Defendant.** | **(Fed.R.Civ.P. 12)** |

# TABLE OF CONTENTS

**PAGE(S)**

I.      Introduction…………………………………….………………..……...…1

II.     Statement of Issues to be
        Decided……………………………………………….……………..…....2

III.    Statement of Relevant Facts………………...
        ………………………………………..…………2-4

IV.     The Purpose and Scope of
        USERRA……………………………………………………………….5

V.      Argument……………………………………………………………....5

        A. Venue for Plaintiff's USERRA Claim is proper in U.S. District
           Court…..….....................................................................................5

           i.      Despite the 1998 USERRA Amendment, There Is Federal
                   Jurisdiction
                   For A Private USERRA Claim Against A State
                   Employer………………………………………..…..6-14

           ii.     Defendant's Argument Fails to Distinguish Suits Against the
                   State of California and Individuals Such as Defendant, Guizar-
                   Maita……………………………………………14-17

           iii.    The Eleventh Amendment Does Not Bar a USERRA
                   Claim………………………………………………...17-19

VI.     California Law Regarding Immunity of School Districts Should Not Be
        Applied in a USERRA Context.
        …………………………………………………...........19-23

VII.   California's GTCA does not bar Plaintiff's Claims under California's Military

and Veteran's Code ……………………………………....………………...23

VIII.  Conclusion……………………….……………….……….....……...........23

# TABLE OF AUTHORITIES

## CASES

*Akhil Reed Amar, Intratextulism*
     112 Harv. L.Rev. 747 (1999)………………………………………..
…………………………..………………….12

*Breur v. Jim's Concrete of Brevard, Inc.*
     538 U.S. 691, 123 S.Ct. 1882, 155 L.Ed.2d 923 (2003)
……………………………..10, 12-13

*Brill v. Countrywide Home Loans, Inc.*
     427 F.3d 446  (7th Cir. 2005……………………………………………………..
………………….……….11, 12

*Chair King, Inc. v. Houston Cellular Corp.*
     131 F.3d 507 (5th Cir. 1997)
…………………………………………………...……11

*ErieNet, Inc. v. Velocity Net, Inc.*
     156 F.3d 513 (3 Cir. 1998)
…………………………………………….….…11

*Foxhall Realty Law Offices, Inc. v. Telecommunications Premium Services, Ltd.*
     156 F.3d 432 (2d Cir. 1998)
………………………………………...……......11

*Grabel & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*
     125 S.Ct. 2363, 162 L.Ed.2d 257 (2005)
………………………...……………………....11

*International Science and Technology Institute, Inc. v. Inacom Communications, Inc.*
     106 F.3d 1146  (4th Cir. 1997)
……………………………...……..…..11

*Jama v. ICE* 543 U.S. 335, 125 S.Ct. 694, 703, 160 L.Ed.2d 708  (6 Cir. 2005)
……………………………………………...…..10

# TABLE OF AUTHORITIES

## (continued)

*Jones v. Wolf Camera, Inc.*
    1997 WL 22678 (N.D. Tex. 1997)
………………………………………………………...……….14

*Lopez v. Davis*
    531 U.S. 230, 241, 121 S.Ct. 714, 148 L.Ed.2d (2001)
……………………………………………………..….10

*Martin v. Franklin Capital Corp.*
    546 U.S. 132, 126 S.Ct 704, 708-709, 163 L.Ed.2d 547 (2005) (2005)
………… ……………………………………………….10

*Murphey v. Lanier*
    204 F3d 911 (9th Cir. 2000)…………………………………...
…………………………………….11

*Nicholson v. Hooters of Augusta, Inc.*
    136 F.3d 1287 (11th Cir. 1998)
……………………………………………………………11

*Novak v. Mackintosh*
    919 F. Supp. 870 (D.S.D. 1996)…………………………..
…………………………………..……………………14

*Valasquez v. Frapwell and Trustees of Indiana Univ.*
    165 F.3d 593-594 (7th Cir. 1999)
……………………………………………………...…….. 8

*Valdez v. Regents of the Univ. of Cal.*
    2005 WL 1541086  (E.D. Cal. 2005)……………………………
…………………………………………..8

# STATUTES, RULES AND REGULATIONS

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12(b)(1)

…………………………………………………………………….………1, 4

**Uniform Services Employment & Reemployment Rights**

38 U.S.C. § 1441(a)……..…………………….

…………………………………………………….......12

38 U.S.C. § 4301…………………………………………………………...4, 5, 20

38 U.S.C. § 4312…………………..…………………………………………….4

38 U.S.C. § 4313………………………………………………………...………4

38 U.S.C. § 4316(c)……………………..…………………………………….4

38 U.S.C. § 4323(b)(1)-(3)……………………………………….…….…..5-10, 23

38 U.S.C. § 4323 (c)(1)(a) …………………………………………………...8

38 U.S.C. § 1331……………………………...………………5-6, 9, 11-13, 16, 23

38 U.S.C. § 4303……………………………………….…....5, 14-15, 21, 23

**California Military and Veterans' Codes**

Cal. Mil. & Vet. Code § 389………………………………………………….4

Cal. Mil. & Vet. Code § 394………………………………………………….4

Cal. Mil. & Vet. Code § 395………………………………………………….4

**Other**

Telephone Consumer Protection Act § 227(b)(3)…………………………………11

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## I.    INTRODUCTION

On April 8, 2008 Romulo Rimando ("Plaintiff") filed a complaint against Alum Rock Union Elementary School District ("Alum Rock"), a California School District, and District employee Guizar-Maita ("Maita") (collectively, "Defendants"), in her individual capacity, under USERRA (Uniformed Services Employment & Reemployment Rights Act) and the California Military and Veterans Code. (*See generally,* Complaint).  Rimando asserted claims including liquidated damages, back-pay, retirement benefits, reinstatement, pre-judgment interest, post-judgment interest, attorney's fees, costs and civil fines. (*Id.*).

In response, Defendants filed a Fed. R. Civ. P. 12(b)(1) Motion to Dismiss for lack of subject matter jurisdiction (*See generally*, Motion and Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss). Specifically, Defendants claim they are entitled to dismissal of all of Plaintiff's claims including Plaintiff's USERRA claims and Plaintiff's supplemental state law claims (*Id.*).  Alternatively, Defendants argue that all of Plaintiffs federal and state law claims Alum Rock should be dismissed based upon Eleventh Amendment Immunity, and that all of Plaintiff's state law claims for damages

and other forms of monetary relief should be dismissed based upon Plaintiff's alleged "failure to comply with GTCA and related District Administration Regulation 3320." (*Id.*).

Plaintiff contends, however, that: (1) jurisdiction in this case is proper in the U.S. District Court for the Northern District of California as USERRA provides for federal jurisdiction regarding USERRA claims against state employers; (2) Defendants are not entitled to Eleventh Amendment immunity as the Eleventh Amendment does not bar a USERRA Claims; (3) in particular, The Eleventh Amendment Does Not Bar A Claim Against the Individual Defendants Named In the complaint; (4) stripping military reservists of their USERRA rights under the guise of Eleventh Amendment Immunity is inequitable and in violation of the purpose and scope of USERRA; and (5) Plaintiff's state-law claims are not barred by noncompliance with GTCA as USERRA trumps state-law and affords claimants the right to retain counsel at any time.

## II.    Statement of Issues to be Decided

The Plaintiff provides the following issues for this Court's decision:

1.    Whether federal question jurisdiction exists for a USERRA claim against a state entity given the provision in USERRA that a private individual's USERRA suit against a state employer "may be brought in a State court of competent jurisdiction in accordance with the laws of the State;"

2.    Whether a private individual may pursue USERRA claims against his former individual supervisors at his state employer who made decisions in violation of USERRA given USERRA's specific definition of "employer" as allowing for suit against individual supervisors;

3.    Whether Plaintiff's claims, if properly brought in federal district court, are barred by the Eleventh Amendment; and

4.    Whether Plaintiff's state-law claims for damages are barred under the GTCA and related District Administrative Regulation 3320.

### III.    Statement of Relevant Facts

Plaintiff was first employed by Alum Rock as a Telecommunications Technician on October 30, 1995 and promoted to Telecommunications Supervisor on October 1, 1997.  Prior to being employed by Alum Rock, Plaintiff served as an enlisted man in the United States Army Reserve from November 5, 1990 until December 21, 1998. Upon his release from this initial period of Reserve duty, Plaintiff returned to civilian life.  On August 11, 2000, Plaintiff reenlisted in the U.S. Army Reserve and remained continuously as a drilling reservist in Reserve status until the present.  At all times relevant to this litigation, Plaintiff was and remains a Sergeant First Class in the United States Army Reserve.

From February 11, 2007 through June 14, 2007, Plaintiff received active duty orders for training which brought him to an active duty status for a period of military training at the Advanced Non-Commissioned Officer's Course.   This period of service included Plaintiff traveling to Fort Gordon, Georgia and serving as a student in the Advanced Non-commissioned Officers course for a period of 129 days, exclusive of travel time.   Upon receiving the military orders, Plaintiff provided his supervisor at Alum Rock with a copy of those orders as a notification of the existence of the orders and of the dates of service contained therein.

Following Plaintiff return to California, he was released from active duty and returned to his prior Reserve status effective June 17, 2007.   Plaintiff received an Honorable Discharge from his period of active duty service.   After leaving active duty with the U.S. Army on June 17, 2007, Plaintiff sought reemployment with Alum Rock on June 20, 2007, following his discharge and return to civilian life.   Plaintiff was reemployed by Alum Rock as a Telecommunications Supervisor on June 25, 2007.

After being reemployed as a Telecommunications Supervisor by Alum Rock on June 25, 2007, and before the expiration of 180 days of required reemployment under federal statute by Alum Rock, Plaintiff was terminated from the defendants' employ on August 9, 2007.   During the period Plaintiff was

employed by Alum Rock between 1995 and 2007, disparagement of his U.S. Army military service was voiced by a member of the Telecommunications Management Team, Maribel Guizar-Maita who said "Watch out for this guy—he's always away on military duty" in comments directed to Alum Rock's chief technology officer and others.

On May 10 2007, Defendant Maribel Guizar-Maita identified Plaintiff as her choice for termination while he was away on military duty during a closed door session of the Alum Rock Union School District Board Members. Plaintiff's obligation for military service and actual military service time away from the defendant employer was, in whole or in part, a motivating factor in Defendants' termination of Plaintiff's employ at Alum Rock.  Alum Rock failed to reemploy Plaintiff to an employment position of similar status, seniority and pay for a period of 180 days upon his return from active duty service in June of 2007.

Alum Rock discharged Plaintiff from employment less than 180 days from his date of reemployment after a period of service of more than 31 days without cause.  The reason given for Plaintiff's termination from employment by Alum Rock on his effective date of termination of August 9, 2007, was "lack of work" and "lack of funds" despite hiring two new communications supervisors from

within the Alum Rock telecommunications organization contemporaneous with the firing of Plaintiff.

On April 8, 2008 Plaintiff filed a Complaint, alleging that Defendant violated provisions of the California Military and Veterans' Code § 389 et seq., including, but not limited to, §§ 394 and 395 and USERRA, 38 U.S.C. § 4301 et seq., including, but not limited to, 38 U.S.C. §§ 4312, 4313, and 4316(c). (*See Generally*, Complaint). Specifically, Plaintiff alleged Alum Rock Union Elementary School District and Maribel Guizar-Maita's actions were willful violations of USERRA and the California Military and Veterans' Code, such that punitive and/or liquidated damages are legally appropriate.

In response, Defendants filed a Fed. R. Civ. P. 12(b)(1) Motion to Dismiss for lack of subject matter jurisdiction (*See generally*, Motion and Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss). Specifically, Defendants claim they are entitled to dismissal of all of Plaintiff's claims including Plaintiff's USERRA claims and Plaintiff's supplemental state law claims (*Id.*). Alternatively, Defendants argue that all of Plaintiffs federal and state law claims Alum Rock should be dismissed based upon Eleventh Amendment Immunity, and that all of Plaintiff's state law claims for damages and other forms of monetary relief should be dismissed based upon Plaintiff's

alleged "failure to comply with GTCA and related District Administration Regulation 3320." (*Id.*).

After being reemployed as a Telecommunications Supervisor by Alum Rock on June 25, 2007, and before the expiration of 180 days of required reemployment under federal statute by Alum Rock, Plaintiff was terminated from the defendants' employ on August 9, 2007. During the period Plaintiff was employed by Alum Rock between 1995 and 2007, disparagement of his U.S. Army military service was voiced by a member of the Telecommunications Management Team, Maribel Guizar-Maita who said "Watch out for this guy— he's always away on military duty" in comments directed to Alum Rock's chief technology officer and others.

On May 10 2007, Defendant Maribel Guizar-Maita identified Plaintiff as her choice for termination while he was away on military duty during a closed door session of the Alum Rock Union School District Board Members. Plaintiff's obligation for military service and actual military service time away from the defendant employer was, in whole or in part, a motivating factor in Defendants' termination of Plaintiff's employ at Alum Rock. Alum Rock failed to reemploy Plaintiff to an employment position of similar status, seniority and pay for a period of 180 days upon his return from active duty service in June of 2007.

Alum Rock discharged Plaintiff from employment less than 180 days from his date of reemployment after a period of service of more than 31 days without cause. The reason given for Plaintiff's termination from employment by Alum Rock on his effective date of termination of August 9, 2007, was "lack of work" and "lack of funds" despite hiring two new communications supervisors from within the Alum Rock telecommunications organization contemporaneous with the firing of Plaintiff.

On April 8, 2008 Plaintiff filed a Complaint, alleging that Defendant violated provisions of the California Military and Veterans' Code § 389 et seq., including, but not limited to, §§ 394 and 395 and USERRA, 38 U.S.C. § 4301 et seq., including, but not limited to, 38 U.S.C. §§ 4312, 4313, and 4316(c). (*See Generally*, Complaint). Specifically, Plaintiff alleged Alum Rock Union Elementary School District and Maribel Guizar-Maita's actions were willful violations of USERRA and the California Military and Veterans' Code, such that punitive and/or liquidated damages are legally appropriate.

In response, Defendants filed a Fed. R. Civ. P. 12(b)(1) Motion to Dismiss for lack of subject matter jurisdiction (*See generally*, Motion and Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss). Specifically, Defendants claim they are entitled to dismissal of all of Plaintiff's claims including Plaintiff's USERRA claims and Plaintiff's supplemental state

law claims (*Id.*).  Alternatively, Defendants argue that all of Plaintiffs federal and state law claims Alum Rock should be dismissed based upon Eleventh Amendment Immunity, and that all of Plaintiff's state law claims for damages and other forms of monetary relief should be dismissed based upon Plaintiff's alleged "failure to comply with GTCA and related District Administration Regulation 3320." (*Id.*).

## IV.    The Purpose and Scope of USERRA

§ 4301. Purposes; sense of Congress

(a) The purposes of this chapter are--

(1) **to encourage noncareer service** in the uniformed services by eliminating or minimizing      the disadvantages to civilian careers and employment which can result from such service;

(2) **to minimize the disruption** to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and

(3) **to prohibit discrimination** against persons because of their service in the uniformed       services.

## V.    Argument

### A. Venue for Plaintiff's USERRA Claim is Proper in U.S. District Court

Because U.S.C. 38 §4323(b)(1)-(3) provides a only a permissive grant of authority for Plaintiffs as private citizens to bring action against state employers, and that option in no way negates the provisions of 28 U.S.C. §1331, which provides for federal jurisdiction in cases which "arise under" federal law.  Furthermore, 38 U.S.C. §4303, in conjunction with 28 U.S.C. §1331, allows for claims against individuals as employers in federal court. Also, there is ample authority for the proposition that the Eleventh Amendment does not generally operate to bar the assertion of a USERRA claim against a state.

### i. Despite the 1998 USERRA Amendment, There Is Federal Jurisdiction For A Private USERRA Claim Against A State Employer.

38 U.S.C. § 4323 (b)(1)-(3) states as follows:

(b)    Jurisdiction

(1)    In the case of an action against a State (as an employer) or a private employer commenced by the United States, the district courts of the United States shall have jurisdiction over the action.

(2)    In the case of action against a State (as an employer) by a person, the action ***may*** be brought in a State court of competent jurisdiction in accordance with the laws of the State.

(3)    In the case of an action against a private employer by a person, the district courts of the United States shall have jurisdiction of the action.

Defendants assert that Plaintiff does not have jurisdiction over this claim pursuant to 38 U.S.C. § 4323(b)(3). (*See,* Memorandum in Support of Motion to Dismiss at 6). The defendants argue that a 1998 amendment to USERRA deprives the federal courts of a particular class of USERRA claims, claims by individuals against states as employers. (*Id.* at 7). However, as will be seen in detail herein, the defendants' argument fails because subsequent Supreme Court opinions have held that, contrary to the case law relied upon by defendants, a grant of jurisdiction to state courts framed such that a plaintiff "may" bring or maintain a suit in state court does not grant exclusive jurisdiction to the state courts. Rather, general federal question or federal diversity jurisdiction statutes are still applicable to the matter. In this instance, the general federal question, or more correctly, "arising under" jurisdictional statute, 28 U.S.C. §1331, therefore supports the maintenance by this Honorable Court of jurisdiction over this matter.

The starting point for an analysis of the jurisdictional issues presented in this matter is, of course, the statutory language. Prior to the 1998 revision of USERRA, the relevant portion of the statute provided:

> **(b) In the case of an action against a State as an employer, the appropriate district court is the court for any district in which the State exercises any authority or carries out any function.** In the case of a private employer the appropriate district court is the

district court for any district in which the private employer of the person maintains a place of business.

**(c)(1)(A) The district courts of the United States shall have jurisdiction, upon the filing of a complaint, motion, petition, or other appropriate pleading by or on behalf of the person claiming a right or benefit under this chapter--**

**(i)** to require the employer to comply with the provisions of this chapter;

**(ii)** to require the employer to compensate the person for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter; and

**(iii)** to require the employer to pay the person an amount equal to the amount referred to in clause (ii) as liquidated damages, if the court determines that the employer's failure to comply with the provisions of this chapter was willful.

38 U.S.C. §4323 (Pre-1998 amendment) (bold emphasis added).

The relevant portion of USERRA after the 1998 revision provides:

**(b) Jurisdiction.--(1)** In the case of an action against a State (as an employer) or a private employer commenced by the United States, the district courts of the United States shall have jurisdiction over the action.

**(2) In the case of an action against a State (as an employer) by a person, the action may be brought in a State court of competent jurisdiction in accordance with the laws of the State.**

**(3)** In the case of an action against a private employer by a person, the district courts of the United States shall have jurisdiction of the action.

38 U.S.C. §4323 (Post-1998 amendment, current law) (bold emphasis added).

One critical point must be noted from the plain statutory text, and that is the statutory contraposition of the word "shall" in 38 U.S.C. §4323(b)(1) and (3) with the word "may" in 38 U.S.C. §4323(b)(2).

At the heart of defendants' argument is a simple proposition. Prior to the revision it was clear that all suits against states under USERRA, whether brought by an individual or by the government were to be brought in federal court because of the mandatory provision that, "district courts of the United States shall have jurisdiction . . . ." 38 U.S.C. §4323(c)(1)(a) (Pre-1998 amendment). According to the defendants' theory, when the statute was amended to provide that when a

private person sues a State to assert a USERRA claim, "the action may be brought in a State court of competent jurisdiction in accordance with the laws of the State[,]" this amended provision gave exclusive jurisdiction over such claims to state courts.

The defendants cite various authorities for the proposition that this textual amendment to the statute gave exclusive jurisdiction over private USERRA claims against a State to state courts.  Two such cases include *Valasquez v. Frapwell and Trustees of Indiana Univ*. 165 F.3d 593, 593-594 (7th Cir. 1999) (per curiam) and *Valadez v. Regents of the Univ. of Cal*., 2005 WL 1541086 (E.D. Cal. 2005).  It is noteworthy that the *Valadez* case in particular merely follows or adopts the holding of the Seventh Circuit per curiam opinion in *Valasquez* without any substantive discussion of the merits of the issue. *Valadez* 2005 WL 1541086, at 3.  Thus, *Valadez* adds little, if any, real weight of authority to the *Valasquez* opinion.

The *Valasquez* per curiam opinion cited considered the matter in a very conclusory way, as might be expected in a per curiam opinion. The per curiam opinion partially vacated the same court's earlier opinion as to Eleventh Amendment sovereign immunity on the grounds that the statutory revision deprived the court of jurisdiction to consider the matter. The relevant portion of the *Valesquez* per curiam opinion holds that:

The amendment to USERRA, so far as bears on this case, adds a new section conferring only on state courts jurisdiction over suits against a state employer, 38 U.S.C. § 4323(b), and makes the new jurisdictional provision applicable to pending cases, Pub.L. No. 105-368, § 211(b)(1), and hence to this case. The defendants argue that jurisdiction continues in the federal courts under the general federal question jurisdictional statute, 28 U.S.C. § 1331, which section 211 of the statute amending USERRA does not purport to repeal. The argument has no merit; Congress's intention to limit USERRA suits against states to state courts is unmistakable; the defendant's arguments that this case was finally decided because the district court issued a final decision and so the amendment is inapplicable, and that if it is applicable it is unconstitutional, also plainly lack merit.

We conclude that we lacked jurisdiction over the plaintiff's USERRA claim, though not over his other claim, which is under Title VII of the Civil Rights Act of 1974. We therefore vacate so much of our decision as relates to the state's Eleventh Amendment defense and, as is customary, *United States v. Munsingwear,* 340 U.S. 36, 41, 71 S.Ct. 104, 95 L.Ed. 36 (1950), we also vacate the relevant ruling by the district court.

Id. at 593-594.

Plaintiff has, since the decision of this matter below, located a district court opinion which squarely addresses the issue and properly interprets "may" as being discretionary. In *McIntosh v. Partridge*, 2007 WL 1295836 (W.D. Tex. 4/30/2007), the court considered the precise jurisdictional issue that is central to the present matter. In <u>McIntosh</u> the court held that:

> The jurisdiction section of the act was amended in 1998. The act currently says that the federal district courts *shall have jurisdiction* in cases where the United States sues a state or where an individual sues a private employer. The current version also says that actions brought by an individual against a state *may be brought* in a state court. 38 U.S.C. § 4323(b)(2) (emphasis added). The former version of the statute said that an action against a state lies in any federal district in that state, regardless of who sued it.

> The agency sees this change as evidence that Congress intended to restrict jurisdiction in cases brought by individuals against states. It is wrong. *May* is permissive-not exclusive or mandatory. If Congress had wanted to restrict cases, it would have said that actions *must* be brought in state courts. The statute allows for state-court jurisdiction without requiring it in suits by individuals against the state.

<u>McIntosh</u>, 2007 WL 1295836 at *2.

As will be seen herein, Judge Hughes' analysis in *McIntosh* is precisely in line with the Supreme Court's interpretation of the word "may," particularly when contraposed with "shall."  There is a significant body of Supreme Court case law supporting the notion that the word "may" in this instance is not mandatory, but is permissive. In particular, interpreting the word "may" in statutory language as being discretionary, not mandatory, is appropriate when, as is the case in the present matter, it is found in close proximity to other clauses containing the word "shall". The Supreme Court has held that, "The word "may" customarily connotes discretion. That connotation is particularly apt where, as here, "may" is used contraposition to the word "shall[.]"" *Jama v. ICE*, 543 U.S. 335, 125 S.Ct. 694, 703, 160 L.Ed.2d 708 (2005) (internal citation omitted); see also, *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 126 S.Ct. 704, 708-709, 163 L.Ed.2d 547 (2005) (the word "may" connotes discretion where the statute has in other instances used the word "shall"), *Lopez v. Davis*, 531 U.S. 230, 241, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001) (reasoning that "Congress' use of the permissive 'may' in one section contrasts with the legislators' use of a mandatory 'shall' in the same section").

In the present version of the statute the use of the word "may" is in perfect contraposition to the two bracketing clauses containing the mandatory "shall". Following the Supreme Court's holding in *Jama*, the only logical conclusion is

that the "may" contained in the current version of 28 U.S.C. 4323(b)(2) is merely discretionary, such that the plaintiff could have brought his suit in state court if he so elected, but does not serve to require that the plaintiff bring his claim in state court.

More Recent Supreme Court Case Law Has Clarified That Grants Of Jurisdiction Containing "May" Are Discretionary, Not Mandatory.  Well after the per curiam decision in *Valesquez* that underlies the defendants' arguments, the very same circuit, the Seventh Circuit, considered the subsequent development of the law concerning grants of jurisdiction to state courts in federal statutory clauses containing the word "may." Moreover, in its later opinion the Seventh Circuit considered the impact of a later Supreme Court case, *Breur v. Jim's Concrete of Brevard, Inc.,* 538 U.S. 691, 123 S.Ct. 1882, 155 L.Ed.2d 923 (2003). It is important to note that *Breur* was rendered after the Ninth Circuit TCPA case relied upon by the defendants below, *Murphey v. Lanier*, 204 F.3d 911 (9th Cir. 2000), for the proposition that statutory language that a plaintiff "may" pursue a claim in state court precludes federal jurisdiction.

In *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446 (7th Cir. 2005), the court considered whether federal jurisdiction existed for a private claim brought under the Telephone Consumer Protection Act. The Seventh Circuit's in depth

consideration of the matter is worth quoting at length as it is directly applicable to the present matter:

> That the controversy exceeds $5 million is insufficient, however, if state courts have exclusive jurisdiction to resolve suits under the Telephone Consumer Protection Act. The district judge relied on § 227(b)(3), which provides:
>
>> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State-
>>
>> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>>
>> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>>
>> (C) both such actions.
>>
>> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

This is the only portion of § 227 that expressly creates a private right of action, and from its failure to authorize litigation in federal court the district judge inferred that state jurisdiction must be exclusive. Six courts of appeals have come to similar conclusions-though they deal only with the question whether suit to enforce the Telephone Consumer Protection Act may be filed or removed under the federal-question jurisdiction, see 28 U.S.C. § 1331, and not whether such a suit may be removed under the diversity jurisdiction.   See *Foxhall Realty Law Offices, Inc. v. Telecommunications Premium Services, Ltd.,* 156 F.3d 432 (2d Cir.1998); *ErieNet, Inc. v. Velocity Net, Inc.,* 156 F.3d 513 (3d Cir.1998); *International Science & Technology Institute, Inc. v. Inacom Communications, Inc.,* 106 F.3d 1146 (4th Cir.1997); *Chair King, Inc. v. Houston Cellular Corp.,* 131 F.3d 507 (5th Cir.1997); *Murphey v. Lanier,* 204 F.3d 911 (9th Cir.2000); *Nicholson v. Hooters of Augusta, Inc.,* 136 F.3d 1287 (11th Cir.1998). **But if state jurisdiction really is "exclusive," then it knocks out § 1332 as well as § 1331.**

These decisions can not be reconciled with either *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,* --- U.S. ----, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005), or *Breuer v. Jim's Concrete of Brevard, Inc.,* 538 U.S. 691, 123 S.Ct. 1882, 155 L.Ed.2d 923 (2003), both of which came after all of the six decisions to which we have referred.  *Grable* resolved a conflict in the Supreme Court's own decisions by holding that **federal jurisdiction does not depend on the existence of a private right of action under federal law. And *Breuer* held that statutory permission to litigate a federal**

**claim in state court does not foreclose removal under the federal-question jurisdiction.**

The Fair Labor Standards Act provides that a plaintiff may "maintain" an action in either state or federal court, and Breuer insisted that a right to "maintain" an action in state court forecloses its removal. **The Justices concluded, however, that a plaintiff's right to litigate in state court does not block a defendant from electing a federal forum, because 28 U.S.C. § 1441(a), the general removal provision, allows the defendant to remove any claim under federal law (or supported by diversity of citizenship) "[e]xcept as otherwise expressly provided by Act of Congress".    The word "maintain" in the FLSA is not an "express" prohibition on removal, *Breuer* held.**

Brill, 427 F.3d at 449-450 (bold emphasis added).

The Seventh Circuit goes on to note the similar role of contraposition between mandatory and permissive clauses in Brill as follows:

**Section 227(b)(3) does not say that state jurisdiction is "exclusive"-but another part of § 227 does use that word. Section 227(f)(1) permits the states themselves to bring actions based on a pattern or practice of violations.    Section 227(f)(2) continues: "The district courts of the United States, the United States courts of any territory, and the District Court of the United States for the District of Columbia shall have exclusive jurisdiction over all civil actions brought under this subsection."    How strange it would be to make federal courts the exclusive forum for suits by**

**the states, while making state courts the exclusive forum for suits by private plaintiffs. But then § 227(f)(2) is explicit about exclusivity, while § 227(b)(3) is not; the natural inference is that the state forum mentioned in § 227(b)(3) is optional rather than mandatory.** Likewise the proviso that actions may be filed in state court "if otherwise permitted by the laws or rules of court of a State" implies that federal jurisdiction under § 1331 or § 1332 is available; otherwise where would victims go if a state elected not to entertain these suits? Our point is not that the reference to exclusive jurisdiction in § 227(f)(2) shows that "Congress knows how" to limit litigation to one set of courts-references to the subjective knowledge of a body with two chambers and 535 members, and thus without a mind, rarely facilitate interpretation-but that differences in language within a single enactment imply differences in meaning as an objective matter. See Akhil Reed Amar, *Intratextualism,* 112 Harv. L.Rev. 747 (1999). The contrast between § 227(f)(2) and § 227(b)(3) is baffling unless one provides exclusivity and the other doesn't.

*Brill*, 427 F.3d at 451 (bold emphasis added).

The logic of the Seventh Circuit in *Brill* is clear, and is in accord with the textual analysis of the statute that the amendment simply provides another forum option for a plaintiff without affecting the general rules of federal jurisdiction. As noted by the Supreme Court with regard to the Fair Labor Standards Act, and after examining a variety of exclusive jurisdiction provisions, in *Breur v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 123 S.Ct. 1882, 155 L.Ed.2d 923

(2003), and equally applicable to the present matter: "When Congress has 'wished to give plaintiffs an absolute choice of forum, it has shown itself capable of doing so in unmistakable terms' It has not done so here."

Id., 123 S.Ct. at 1885-1886.[1]

Considering the foregoing, Plaintiff respectfully submits that it is clear that his claim is one for relief pursuant to USERRA, a federal statute. Congress authorized jurisdiction in federal district courts "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Thus, the federal courts properly have jurisdiction over this matter.[2]  That plaintiff has elected not to bring his suit in state court is his right, but it does not defeat federal jurisdiction. The defendants' arguments are, without substance in that they are based on a per curiam opinion that gives no analysis. Moreover, the very same

---

[1] Other courts have similarly applied *Breuer* as holding that permissive language in a federal statute allowing that a suit be brought or maintained in state court, in the absence of express language denying federal jurisdiction, allows for the exercise of general federal question jurisdiction and removal jurisdiction. *See Conine v. Universal Oil Product Co.,* 2006 WL 681180 (W.D.La. March 14, 2006) (FMLA suit that "may be maintained" in state court insufficient to create exclusive state court jurisdiction.); *Lindsay v. GEICO,* 448 F.3d 416 (D.C. Cir. 2006) (Recognizes rule from *Breuer* that in absence of language expressly denying federal jurisdiction, permissive grant of jurisdiction to state court did not prevent removal of claim.); *Barrow v. Harris Corp.,* 2004 WL 2713276 (W.D. Tex. 2004) (Applies Breuer rule that permissive statutory right to maintain action in state court does not displace federal jurisdiction in context of concurrent right to bring ERISA claims in state or federal court.); *Hodge v. Dogencorp*, 2005 WL 1668535 (M.D. Fla. July 13, 2005) (Applies *Breuer* rule in a FLSA removal and motion for remand context, denying motion to remand.).

[2] Plaintiff notes for the Court that 28 U.S.C. §1331 was asserted by the plaintiff in Paragraph 3 of his original Complaint as an alternative basis for jurisdiction. Additionally, while the 1998 USERRA amendment removed any specific venue provision for a private suit against a state as an employer, the plaintiff also asserted the propriety of venue in this matter pursuant to 28 U.S.C. §1391(b) in Paragraph 4 of his original Complaint.

---

circuit which issued the opinion at the root of defendants' argument has subsequently recognized that the Supreme Court has reached the opposite conclusion in analogous cases concerning federal jurisdiction. Therefore, the plaintiff respectfully urges the Court to find that federal jurisdiction has been established in this matter.

> ## ii. Defendant's Argument Fails to Distinguish Suits Against the State of California and Individuals Such as Defendant, Guizar-Maita.

The USERRA definition of "employer" is as follows:

38 U.S.C. § 4303

**(4)(A)** Except as provided in subparagraphs (B) and (C), the **term employer" means any person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities, including--**

**(i) a person, institution, organization, or other entity to whom the employer has delegated the performance of employment-related responsibilities;**

**(ii)** the Federal Government;

**(iii)** a State;

**(iv)** any successor in interest to a person, institution, organization, or other entity referred to in this subparagraph; and

**(v)** a person, institution, organization, or other entity that has denied initial employment in violation of [section 4311](#).

(bold emphasis added).

Unlike most other employment related statutes, USERRA includes in its definition of an "employer" subject to suit for a USERRA violation "a ***person***, institution, organization, or other entity to whom the employer has delegated the performance of employment-related responsibilities; ." 28 U.S.C. § 4303(4). Every court which has considered the application of the USERRA definition of "employer" has held that it allows for the assertion of claims against individuals responsible for illegal acts, although in some cases the particular facts did not support such a claim. *See, Novak v. Mackintosh*, 919 F.Supp. 870, 877-878 (D.S.D. 1996) (Interpreting predecessor act, VRRA, in light of USERRA legislative history which analogizes to the FLSA and statutory definition, finding that VRRA and USERRA both include individuals as "employers" subject to liability.); *Jones v. Wolf Camera, Inc.,* 1997 WL 22678 (N.D.Tex. 1997) (USERRA definition of "employer" includes individuals and permits claims for liability on the part of individuals as an "employer."); *Brandsasse v. City of Suffolk, Virginia*, 72 F.Supp.2d 608, 617-618 (E.D. Va. 1999) (Denial of Motion to Dismiss, holding that city Director of Personnel who had authority over hiring

and firing, denied request for accommodation, and started pretextual investigation against Plaintiff could be sued pursuant to USERRA.).

Being that Plaintiff named Guizar-Maita as a Defendant (*See Generally,* Complaint), Plaintiff's complaint has indeed named two separate "employers" for purposes of USERRA.   In Accordance with 38 U.S.C. § 4303, Plaintiff has named Alum Rock, *an **institution** **or** **organization*** and Guizar-Maita, *an **individual person***.

Defendants do not dispute that USERRA provides a right of action against individuals. Rather, the Defendants downplay the facts as alleged in Plaintiff's complaint with regard to Guizar-Maita, who is a named Defendant. (*See Generally,* Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss). While the Defendants do little to address Guizar-Maita as an individually-named Defendant in their Memorandum in Support of their Motion to Dismiss, the inevitable question is whether individuals who are state supervisors, like Guizar-Maita, are subject to suit in federal court.

Diligent research has revealed only one case which squarely confronted the issue of whether a USERRA plaintiff may sue state officials in their individual capacity when there is no jurisdiction for suit against the state employer, *Palmatier v. Michigan Dep't of State Police*, 981 F.Supp. 529, 532 (W.D. Mich. 1997). In *Palmatier* the plaintiff filed suit against the Michigan Department of Public

Safety with two claims or theories of relief, one for breach of contract and the other for alleged violations of USERRA. *Id.* at 530. The *Palmatier* court first concluded that the Eleventh Amendment barred suit against Michigan for a USERRA claim, Michigan had not waived the Eleventh Amendment immunity, and therefore the court lacked jurisdiction to hear the plaintiff's USERRA claim against the State of Michigan. *Id.* at 532. The *Palmatier* court, however, went on to allow the plaintiff's USERRA claim to proceed against the supervisors named in the suit, holding:

> The same result [dismissal on Eleventh Amendment grounds] obtains with respect to the USERRA claim against defendants James Carter and Harold Raupp, to the extent they are sued in their official capacities for retroactive injunctive relief and damages. *Doe v. Wiggington*, 21 F.3d 733, 736-737 (6th Cir. 1994) (official capacity suit against state official for retroactive relief is deemed to be against state itself and barred by Eleventh Amendment). However, **the USERRA claim against them in their official capacities for prospective injunctive relief and in their individual capacities for damages may proceed**. Id. at 737. (Official capacity suit for prospective relief only is not barred by Eleventh Amendment); *Hutsell v. Sayre,* 5 F.3d 996, 1003 (6th Cir. 1993), cert. denied, 510 U.S. 1119, 114 S.Ct. 1071, 127 L.Ed.2d 389 (1994), (Eleventh Amendment provides state officials with no immunity from individual suit.)

*Id.*

        The *Palmatier* court had to resolve whether the supervisors of a state employee, sued in their individual capacity under USERRA, took on the status of the state for jurisdictional purposes.  Clearly, as recognized by the *Palmatier* court, nothing in USERRA requires that all defendant employers be neatly fit within a single category of state employers or private employers.  When Congress wrote USERRA with a uniquely broad and reticulated definition of "employer", the intent was to give the employee the broadest possible range of options as to potential defendants in order to maximize the chances that a USERRA plaintiff could actually find, sue, and recover from a viable defendant.  The plain language and structure of USERRA indicates that individuals who undertake discriminatory or violative acts are clearly meant to be a separate category of defendants.

        Again, considering the foregoing, Plaintiff respectfully submits that it is clear that his claim against Guizar-Maita is one for relief pursuant to USERRA, a federal statute. Because 28 U.S.C. § 1331 specifically authorizes jurisdiction in federal district courts "of all civil actions arising under the Constitution, laws, or treaties of the United States," the U.S. District Court for the Northern District of

California has proper authority to hear Plaintiffs claims *against Guizar-Maita* as *an individual* regardless of Plaintiff's claims against Alum Rock.

### iii.    The Eleventh Amendment Does Not Bar a USERRA Claim.

The Defendants urge that the Plaintiff's claims are barred by the Eleventh Amendment. (*See* Defendant's Memorandum In making this argument the defendants relied heavily on two sources of authority.

First, the primary authority relied upon by the defendants is the original, now partially vacated, opinion in *Valasquez v. Frapwell*, 160 F.3d 389 (7th Cir. 1998), vacated in part, 165 F.3d 593 (1999). In any event, it should be noted that the very portion of the opinion relied upon by defendants for support of their Eleventh Amendment sovereign immunity argument is no longer valid law according to the very court which issued the opinion. Second, the defendants also relied on the Supreme Court's holding in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) that Congress could not regulate Indian Gaming pursuant to its Article I powers. *Seminole* in no way addressed Congress's Article I War Powers.

Contrary to *Seminole Tribe*, in *Alden v. Maine*, 527 U.S. 706 (1999), the Court held that what is known as Eleventh Amendment immunity is actually a preexisting fundamental aspect of the states pre-ratification sovereignty, subject

to alteration by the "plan of the [Constitutional] Convention or certain constitutional Amendments. *Id.* at 713. The logical extension of the *Alden* Court's conclusion was that, contrary to the Court's dicta in *Seminole Tribe*, Article I powers could in fact abrogate sovereign immunity: "In exercising its Article I powers Congress may subject the States to privates suits in their own courts only if there is 'compelling evidence' that the States were required to surrender this power to Congress pursuant to Constitutional design." See <u>Id</u>. at 730-31.

In 2006 in *Central Virginia Community College v. Katz*, 546 U.S. 356 (2006), specifically held that Congress could abrogate sovereign immunity pursuant to its Article I powers, holding that the Article I, §8 Bankruptcy Clause represents one such power. In doing so, the Court retracted its *Seminole Tribe* reasoning completely, stating:

> We acknowledge that statements in both the majority and the dissenting opinions in *Seminole Tribe* reflected an assumption that the holding in that case would apply to the Bankruptcy Clause. Careful study and reflection have convinced us, however, that that assumption was erroneous. For the reasons stated by Chief Justice Marshall in *Cohens v. Virginia*, 6 Wheat. 264, 5 L. Ed. 257 (1821), we are not bound to follow our dicta in a prior case in which the point now at issue was not fully debated.

See *Katz*, 546 U.S. at 363.

Following the Court's reasoning in *Alden* that "limits implicit in the constitutional principle of sovereign immunity strike the proper balance between the supremacy of federal law and the separate sovereignty of the States," *see Alden*, 527 U.S. at 710, the *Katz* Court opened a clear avenue to overcome state assertions of sovereign immunity pursuant to Article I powers, on the basis of implied waiver. Under the newly articulated standard, waiver of sovereign immunity need not be as explicit as consent, nor must Congress even expressly abrogate state immunity.[3]

Like the Bankruptcy Clause at issue in *Katz*, it is also appropriate to presume that the Framers of the Constitution were familiar with the contemporary legal context when the war powers clauses were adopted. The *Katz* Court emphasized that the need for *uniformity* in bankruptcy was the historical basis upon which the Bankruptcy Clause was adopted, indicating the States' waiver of immunity in that arena. See *Id.* at 366, 368. Similarly, it has long been held that "*the common defense* was one of the purposes for which the people ordained and established the Constitution [such that] we need not refer to the numerous statutes that contemplate defense of the United States, its Constitution and laws, by armed

---

[3] Even a brief perusal of USERRA reveals, however, that there is ample evidence that Congress intended that States be subject to suit through the numerous references to suits against the states in USERRA. Particularly telling is the remedies provision contained in 38 U.S.C. §4323(d)(3), which explicitly makes states subject to the same remedies as any private employer.

citizens." *See United States v. Macintosh*, 283 U.S. 605, 620 (1931), thus furnishing a similar basis upon which States' should be deemed to have waived immunity in the war powers context.

Finally, the principle that Congress' war powers were intended to be complete and absolute when written into the Constitution has long been recognized by the Supreme Court, another indication that States' waived their immunity when the war powers were ratified:

> Whatever tends to lessen the willingness of citizen to discharge their duty to bear arms in the country's defense detracts from the strength and safety of the government ... The Constitution, therefore, wisely contemplating the ever-present possibility of war, declares that one of its purposes is to 'provide for the common defense.' In express terms Congress is empowered 'to declare war,' which necessarily connotes the plenary power to wage war with all the force necessary to make it effective; and 'to raise armies' (Const. Art. 1 §8, cl. 11, 12), which necessarily connotes the like power to say who shall serve in them and in what way.

See Id. at 622.

Thus, there is ample authority for the proposition that the Eleventh Amendment does not generally operate to bar the assertion of a USERRA claim against a state.

## VI    California Law Regarding Immunity of School Districts Should Not Be Applied in a USERRA Context.

38 U.S.C. § 4323(j) provides, the term "private employer" includes a political subdivision of a State. While the Defendants aver that "California school districts are considered arms of the state for purposes of the Eleventh Amendment" (*See* Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss at 9), Plaintiff argues that they are "employers" and political subdivisions of the state for purposes of USERRA, which should not be afforded the typical immunity California has allowed with regard to its school districts.

Defendants are correct in their assertion that individuals may sue "private employers" in federal court for alleged USERRA violations . . ." (*See* Defendant's Memorandum in Support of Defendant's Motion to Dismiss). However, Defendant's argue "while USERRA defines 'private employers' to include 'political subdivisions of a State . . . in the context of the 1998 amendments this can mean only political subdivisions of the State not considered the State for purposes of Eleventh Amendment immunity." (*Id.* at 8). However,

for reasons discussed above, USERRA claims are not barred by the Eleventh Amendment.[4]    Furthermore, California's Law regarding the immunity of California school districts has not been, and should not be, applied in the context of USERRA.

38 U.S.C. §4302(b) provides,

> This chapter supersedes any State Law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

Defendants are correct in noting that, typically, California school districts are typically considered "arms of the state" for purposes of Eleventh Amendment immunity in accordance with *Belanger v. Madera*, 963 F.2d 248 (9th Cir. 1992), *Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116, etc. However, USERRA is not a typical cause of action.  The fact is, application of rules with regard to school districts would leave the reservist Plaintiff with absolutely no form of relief in the wake of a USERRA violation.

Such absolute immunity is disruptive to the purpose and scope of USERRA, which, as mentioned previously, is: 1.) to encourage non-career military service, 2.) minimize disruption to the lives of military reservists, and 3.) prevent

---

[4] Article I powers can abrogate sovereign immunity.

discrimination against military reservists on the basis of their service. 38 U.S.C. §4301. To allow California's school districts to ignore USERRA based on sovereign immunity would render the statute impotent with regard to any military reservist employee working at any school in California. There is neither likelihood nor guarantee that California would waive Eleventh Amendment immunity thus allowing military reservists to obtain relief in regard to the discriminatory practices of California school-districts. This, of course, ensures no relief for soldiers who normally are afforded the legislative protections of USERRA. If California's laws with regard school-district immunity area applied in a USERRA context, those laws thus directly violate 38 U.S.C. §4302(b) and Article VI, Clause 2 of the United States Constitution, which reads:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the authority of the United States, shall be the supreme Law of the land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

Rather than attempt to comport USERRA with cases such as *Belanger*, which do not involve USERRA claims, this Honorable Court should look to cases such as *Carpenter v. Tyler Independent School Dist.*, 226 429 F.Supp.2d 848 (E.D. Tex. 2006) and Smith v. School Bd. of Polk County, Florida, 205

F.Supp.2d 1308 (M.D.Fla.2002), which allowed USERRA claims to be pursued against school-districts.

Further, while these Defendants attempt to hide behind the veil of the State. For purposes of USERRA, the State itself is an "employer" subject to the provisions and remedies afforded by USERRA.  The Court in *Mayer v. City of Chicago* explains the relation of "the State" to USERRA:

> Under USERRA, a "State" is subject to "the same remedies [one of which is liquidated damages under § 4323(d)(1)(C) ], including prejudgment interest, as may be imposed upon any private employer under this section." 38 U.S.C. § 4323(d)(3). USERRA defines "private employer" as including "a political subdivision of a State." 38 U.S.C. § 4323(j). **The general definition section of USERRA includes a State within its definition of an employer**, 38 U.S.C. § 4303(4)(a)(iii), and the term State is defined to include each of the several states of the United States, including its agencies and political subdivisions. Id. at § 4303(14).

*Mayer v. City of Chicago,* 463 F.Supp.2d 837, 841 (N.D. Illinois 2006).

Considering the forgoing, Defendant's argument that the school-district is merely an "arm of the state" which, in turn, subjects it to Eleventh Amendment immunity is an attempt to circumnavigate USERRA by employing a loophole which was never anticipated to exist under the statute.  Defendant's arguments are adverse to legislative intent as well as the purpose and scope of USERRA.  In fact, the legislature is currently attempting to shut down arguments, like

Defendant's by passing the "Servicemembers Access to Justice Act of 2008[5]," which proposes to amend USERRA as follows:

> (a) In General- Section 4323 of title 38, United States Code, is amended--
>
> (1) in subsection (b) by striking paragraph (2) and inserting the following new paragraph:
>
> `(2) In the case of an action against a State (as an employer) by a person, the action may be brought in the appropriate district court of the United States or State court of competent jurisdiction.';
>
> (2) by redesignating subsection (j) as subsection (k); and
>
> (3) by inserting after subsection (i) the following new subsection:
>
> `(j) Waiver of State Sovereign Immunity- (1) A State's receipt or use of Federal financial assistance for any program or activity of a State shall constitute a waiver of sovereign immunity, under the 11th amendment to the Constitution or otherwise, to a suit brought by--
>
> `(A) a person who is or was an employee in that program or activity for the rights or benefits authorized the person by this chapter;

As is clear from the original legislation as well as the proposed Amendments to USERRA, Congress' intent in the creation of USERRA was to allow the maximum amount of relief which could possibly be afforded to our military reservist. Under the proposed law, there will be no doubt that Plaintiff's

---

[5] Sponsored by Senator Barack Obama and Senator Ted Kennedy

claim against the school-district, even if categorized as an arm of the state, may be heard in the appropriate district court of the Unites States as well as the appropriate State court.  Because of arguments and cases cited by the Defendants like *Valadez,* it has become necessary for Congress to further clarify the purposes, goals and reach of USERRA.

## VII.    California's GTCA does not bar Plaintiff's Claims under California's Military     and Veteran's Code

The Defendants argue that GTCA requires that "any party with a claim for money or damages against a public entity must first file a claim directly with that entity; only if that claim is denied or rejected may the claimant then file a law suit." (*See* Memorandum in Support of Defendant's Motion to Dismiss at 15). However, Government Code § 905 exempts the form of claims at issue in this case, which are "claims by public employees for fees, salaries, wages, mileage, or other expenses and allowances" and "applications or claims for money or benefits under any public retirement or pensions system."

Furthermore, Plaintiff's State claims under California's Military and Veteran's Code are incidental and pendant to Plaintiff's claims under USERRA, which allows Plaintiffs to consult counsel at any time in accordance  with 38 U.S.C. § 4323.  Furthermore, because the school-district itself is not the proper venue for filing of a USERRA claim, the Plaintiff filed its relevant USERRA

claims, along with its state claims, with the U.S. District Court for the Northern District of California rather than with the school-district itself.

### VIII. Conclusion

U.S.C. 38 §4323(b)(1)-(3) provides only a permissive grant of authority for Plaintiffs as private citizens to bring action against state employers, and that option in no way negates the provisions of 28 U.S.C. §1331, which provides for federal jurisdiction in cases which "arise under" federal law.  Furthermore, 38 U.S.C. §4303, in conjunction with 28 U.S.C. §1331, allows for claims against individuals as employers in federal court.  Also, there is ample authority for the proposition that the Eleventh Amendment does not generally operate to bar the assertion of a USERRA claim against a state.  The primary goal of USERRA is to maximize the chance that a servicemember can seek relief for discrimination against him on the basis of his military service. Allowing the Defendants absolute immunity as an "arm of the State" violates the purpose and scope of USERRA and renders the statute useless to all reservists employed in the school-districts of California.

For the forgoing reasons, this Court should **DENY** the Defendant's Motion to Dismiss.


Dated this 1st day of September, 2008.

Respectfully Submitted:


*s/George C. Aucoin*
**GEORGE C. AUCOIN**
La. Bar No. 24747
Law Offices of George C. Aucoin, APLC
3500 N. Hullen Street
Metairie, LA 70002
Telephone: (985) 727-2263
Facsimile: (985) 951-7490
***COUNSEL FOR PLAINTIFF***


<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on this 1st day of September, 2008, I electronically filed the foregoing with the Clerk of Court CM/ECF system, which will automatically send notice to all counsel of record.

*s/George C. Aucoin*
GEORGE C. AUCOIN